BURGESS, a.k.a. Mathews, Appellant,

v.

DOE; City of Lebanon, Appellee.

[Cite at *Burgess v. Doe* (1996), 116 Ohio App.3d 61.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA96–05–047.

Decided Dec. 2, 1996.

*George P. Brandenburg,* for appellant.

*Freund, Freeze & Arnold, Jane M. Lynch* and *August T. Janszen,* for appellee.

---

KOEHLER, Judge.

Plaintiff-appellant, Rhonda K. Burgess, a.k.a. Rhonda K. Mathews, appeals an order of the Warren County Court of Common Pleas granting summary judgment in favor of defendant-appellee, the city of Lebanon. Appellant also appeals an order of the trial court dismissing her action against defendant John Doe, administrator of the estate of William Burgess.

Appellant married William Burgess ("Burgess") in July 1991. They separated, however, in December 1991. On June 27, 1992, at approximately 10:00 p.m., appellant was working at the VFW Hall on Silver Street in Lebanon, Ohio, when Burgess showed up with a gun in his hand. Appellant picked up a cordless telephone to call the Lebanon Police Department. Burgess told appellant that "it was too late for that." Appellant then immediately ran out of the VFW Hall to the police department, which is located on the same block as the VFW Hall.

The police department has three entry doors to access the interior offices. The front door is always open and unlocked. After entering this front door, there is an entryway approximately four feet long by nine feet wide that leads to a second door ("the first entry door"). This door is locked after 6:00 p.m. There is an intercom system to allow persons to speak with a communication officer to gain access to the locked area after 6:00 p.m. Once a person enters this locked area, there is another entryway and a third door (the "second entry door") which leads to the actual police and communications offices. This door is always locked.

At the time of the incident, there were only two persons present at the police department, communication officer Beth Allen ("Allen"), who was working, and Cathy Gearhart ("Gearhart"), another communication officer who was off duty that night and was visiting Allen. Sometime after 10:00 p.m., appellant entered the police department through the front door. In an affidavit filed with appellee's November 22, 1995 motion for summary judgment, Allen explained what happened next:

"2. Rhonda Burgess entered the front door and was in the four foot entryway between the front door and the first entry door and was speaking loudly and unclearly into the intercom. Because I could not understand her, Kathy Gear-

hart unlocked the first entryway door and Rhonda Burgess entered into the lobby area.

"3. Rhonda Burgess started to tell us about someone following her when Kathy Gearhart noticed on the video camera that a man was walking up to the front door. We could not tell who he was because of the angle of the camera but because of the hour, the fact that we were alone in the department, and the fact that Rhonda Burgess was upset about someone following her, I locked the entryway door behind Rhonda Burgess.

"4. The man, who I later found out to be Mr. Burgess, walked in the front door, [tried to open the locked first entry door] and immediately started shooting through [that] locked entryway door at Rhonda Burgess. There was no time to either instruct Rhonda Burgess as to how to open the second entry door or go to that door and open it for her. The second entryway door is around the corner and down the hall from the dispatch office where we were located."

Appellant was shot in both her left hand and her nose. Burgess was arrested later that night. Burgess was eventually convicted of attempted murder. Appellant divorced Burgess in January 1993. Burgess died in December 1994 while incarcerated at the Chillicothe Correctional Institution in Chillicothe, Ohio.

On February 21, 1995, appellant filed a complaint in the trial court against John Doe, administrator of the estate of William Burgess, the Lebanon Police Department, and appellee. On April 20, 1995, the Lebanon Police Department and appellee filed a motion for summary judgment on the grounds that (1) the Lebanon Police Department was not an entity with the capacity to be sued, and (2) appellee was immune from liability under R.C. Chapter 2744. By entry filed July 14, 1995, the trial court converted the motion for summary judgment into a motion to dismiss pursuant to Civ.R. 12(B)(6) and dismissed appellant's action against the Lebanon Police Department on the ground that the police department was not *sui juris* and lacked the capacity to be sued, but allowed appellant's action to proceed against appellee.

On November 22, 1995, appellee filed a motion for summary judgment. By decision and judgment entry filed May 1, 1996, the trial court granted summary judgment in favor of appellee on the grounds that (1) there was no special duty owed to appellant and undertaken by appellee; (2) there was no evidence of appellee's negligence; and (3) appellee was immune from liability under R.C. 2744.03(A)(3) and (5). On May 31, 1996, appellant filed a motion to reinstate the case with regard to John Doe. By supplemental entry filed June 14, 1996, the trial court dismissed appellant's action against John Doe for failure to obtain service of process pursuant to Civ.R. 3(A).

Appellant timely filed this appeal and raises two assignments of error. In her first assignment of error, appellant argues that appellee did not have sovereign immunity under R.C. Chapter 2744 and that, therefore, it was error for the trial court to grant summary judgment in favor of appellee on that basis. More specifically, appellant argues (1) that appellee was negligent by breaching its duty to protect her under R.C. 737.11; (2) that, as a result, appellee is liable under R.C. 2744.02(B)(2) or (4); and (3) that the defenses and immunities from liability set forth in R.C. 2744.03(A)(3) and (5) do not apply in the case at bar.

Civ.R. 56(C) provides in part that summary judgment must be rendered where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Additionally, a party who opposes a motion for summary judgment may not rest upon the allegations or denials of his pleadings but must affirmatively demonstrate the existence of genuine issues of material fact in order to prevent the granting of a motion for summary judgment. Civ.R. 56(E); *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

R.C. 2744.02(A)(1) sets forth a general grant of immunity and states:

" * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or propriety function."

This general grant of immunity can be abrogated by five limited exceptions set forth in R.C. 2744.02(B)(1) through (5). R.C. 2744.02(B)(2) and (4), which appellant argues are applicable in this case, state:

"(2) * * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

"* * *

"(4) * * * political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of * * * buildings that are used in connection with the performance of a governmental function * * *."

If none of the exceptions applies, the political subdivision is immune from suit. See *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 496, 576 N.E.2d 807, 812–813. If, however, an exception applies, the political subdivision may still be immune based upon R.C. 2744.03, which contains defenses and immunities from liability.

Contrary to appellant's assertion, the proprietary function exception to the general grant of immunity set forth under R.C. 2744.02(B)(2) does not apply to

the case at bar. To fall within the proprietary function exception, the employee must have been performing a proprietary function of the city rather than a governmental function. R.C. 2744.01(C)(2)(a) specifically provides that the provision or nonprovision of police services or protection is a governmental function. Thus, R.C. 2744.02(B)(2) does not apply in the case at bar.

We now turn to R.C. 2744.02(B)(4). For R.C. 2744.02(B)(4) to apply, the injury to the person must have been caused by the negligence of the employees of the political subdivision within or on the grounds of buildings used in connection with a governmental function. Appellant argues that R.C. 2744.02(B)(4) applies here because Allen and Gearhart were negligent by breaching their duty to protect her under R.C. 737.11.[1] More specifically, appellant argues that Allen and Gearhart failed to ensure her safety even though appellant had talked to one of the employees earlier that night and had told the employee about her husband's intention to kill her. Appellant's argument seeks to apply the public duty doctrine.

The public duty doctrine provides that a state cannot be held liable to an individual for breach of a duty owed to the general public: "When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury." *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph two of the syllabus.

The public duty doctrine is not, however, an absolute defense, as it must be considered with the principles of public duty, special relationship, and negligence. "If a special relationship is demonstrated, then a duty is established, and inquiry will continue into the remaining negligence elements." *Id.* at 230, 525 N.E.2d at 477. In order to demonstrate the existence of a special duty or relationship, the following elements must be shown to exist:

"(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Sawicki* at paragraph four of the syllabus.

The determination of whether a duty is owed is a question of law for the trial court to decide. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 134–135, 20 OBR 166, 167–169, 485 N.E.2d 287, 289–291.

---

1. R.C. 737.11 provides in part that "[t]he police force of a municipal corporation shall preserve the peace, protect persons and property * * *."

■ We agree with the trial court that there was no special duty owed to appellant in the case at bar. For a special duty to exist, "the assumption of an affirmative duty on a municipality's part requires that the municipality do more than adhere to its statutory duty. It must voluntarily assume some additional duty." *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 101, 543 N.E.2d 1188, 1194. It is well established that no special relationship exists simply because a member of the general public requests assistance from the police. *Sawicki*, 37 Ohio St.3d at 232–233, 525 N.E.2d at 478–479. See, also, *Mitchell v. Cleveland* (Jan. 15, 1987), Cuyahoga App. No. 51602, unreported, 1987 WL 5471.

In the case at bar, there is no evidence that appellee, through its communication officers Allen and Gearhart, assumed an affirmative duty to protect and ensure the safety of appellant in her individual capacity. We therefore find that there was no special relationship undertaken by appellee and owed to appellant. Thus, further inquiry into the remaining elements of negligence is not necessary. In light of the foregoing, we find that the exception to sovereign immunity set forth in R.C. 2744.02(B)(4) does not apply to the case at bar.

■ In light of our foregoing holding that neither R.C. 2744.02(B)(2) nor 2744.02(B)(4) applies, we find that the facts of this case do not fall within any of the exceptions to the general grant of sovereign immunity set forth in R.C. 2744.02. We therefore need not decide whether the defenses in R.C. 2744.03(A)(3) or (5) apply.[2] The trial court did not err in granting summary judgment in favor of appellee. Appellant's first assignment of error is overruled.

■ In her second assignment of error, appellant argues that the trial court erred in dismissing appellant's action against John Doe. Appellant contends that the trial court failed to give her notice of its intent to dismiss in violation of Civ.R. 41(B)(1).

Civ.R. 41(B)(1) provides that "[w]here the plaintiff fails to prosecute, * * * the court * * * on its own motion may, after notice to the plaintiff's counsel, dismiss an action or a claim." While the trial court apparently dismissed appellant's action against John Doe without notice to appellant, we nevertheless find that the trial court did not err in dismissing appellant's action against John Doe for failure of commencement.

---

**2.** We are mindful that the trial court in part granted summary judgment on that basis of R.C. 2744.03(A)(3) and (5). However, "[a]n appellate court must affirm a trial court's judgment if upon review any valid grounds are found to support it." *Miller v. Wadsworth City Schools* (1994), 93 Ohio App.3d 278, 282, 638 N.E.2d 166, 168.

Civ.R. 3(A) provides in part that "[a] civil action is commenced by filing a complaint with the court, *if service is obtained within one year from such filing* upon a named defendant * * *." (Emphasis added.) It is clear under Civ.R. 3(A) that effective service of summons is a requisite to the commencement of a cause of action. *Lash v. Miller* (1977), 50 Ohio St.2d 63, 65, 4 O.O.3d 155, 156, 362 N.E.2d 642, 643. In *Saunders v. Choi* (1984), 12 Ohio St.3d 247, 12 OBR 327, 466 N.E.2d 889, the Supreme Court of Ohio held that "[t]he purpose of Civ.R. 3(A) is designed to promote the prompt and orderly resolution of litigation, as well as eliminating the unnecessary clogging of court dockets caused by undue delay. * * * Such a rule goes to the essence of civil procedure and is not, in our view, a mere technicality designed to deny parties their day in court." *Id.* at 250, 12 OBR at 330, 466 N.E.2d at 893.

In the case at bar, appellant filed her complaint on February 21, 1995. The record shows that while service of process was obtained on appellee and the Lebanon Police Department, service of process was not obtained on John Doe within one year of the filing of her complaint. As a result, appellant's action was never commenced under Civ.R. 3(A). Consequently, the trial court did not err in dismissing appellant's action against John Doe.[3]

Appellant's second assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.

---

**3.** The result in this case is consistent with the result in *Woodson v. Highland Beefalo Farms, Inc.* (1996), 116 Ohio App.3d 38, 686 N.E.2d 551. The plaintiff in *Woodson* obtained proper service upon the defendant. The case was then dismissed for want of prosecution after the plaintiff failed to appear in court on the date of the scheduled trial. Because the plaintiff failed to receive prior notice of the dismissal as required by Civ.R. 41(B)(1), this court determined that the trial court erred in dismissing his claim.