[Cite as *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY


BRADY, Admr.,

     APPELLANT,

     CASE NO. 3-10-21

     v.

BUCYRUS POLICE

     O P I N I O N

  DEPARTMENT ET AL.,

     APPELLEES.


**Appeal from Crawford County Common Pleas Court**
**Trial Court No. 09-CV-0229**

**Judgment Affirmed**

**Date of Decision: May 23, 2011**


APPEARANCES:

     **Beth Allen Owens and John W. Allen, for appellant.**

     **Jack R. Baker, for appellees.**

**ROGERS, Presiding Judge.**

{¶1} Plaintiff-appellant, Evelyn Brady, as representative of the estate of Lance Randall, deceased, appeals from the judgment of the Court of Common Pleas of Crawford County granting summary judgment in favor of defendants-appellees, city of Bucyrus, the Bucyrus Police Department, Officer Kevin Wert, and Chief of Police Kenneth Teets. On appeal, Brady contends that the trial court erred in finding that there were no genuine issues of material fact. Based on the following, we affirm the judgment of the trial court.

{¶2} In the early morning hours of October 13, 2005, Officer Wert was dispatched to investigate a suspected drunk driver. Officer Wert pulled the vehicle over, at which point Randall exited the vehicle, requesting Officer Wert to give him a break and let him go. Randall informed Officer Wert that he had received a number of OVIs and that another one would end and ruin his life. During the stop Officer Wert noticed that Randall's eyes were bloodshot, his speech was slurred, and there was an odor of alcoholic beverage on his breath. As a result, Officer Wert conducted several field sobriety tests, all of which Randall had difficulty with. Officer Wert took Randall into custody and transported him to the police station. At the police station Randall called his mother, Brady, to come pick him up.

{¶3} Officer Wert testified by deposition that upon Brady's arrival at the police station, he led her and Randall to an interior room within the station. There, in Brady's presence, Officer Wert asked Randall whether he was going to harm himself. According to Officer Wert, Randall responded that by his life being over and ruined he meant that he was going to lose his driver's license and that he was not going to hurt or kill himself. Officer Wert further testified that Randall had requested him to send all the evidence of the case to his attorney Edward Wead.

{¶4} Brady testified by deposition that upon her arrival at the police station she was directed to wait for Randall, who was in another room. Approximately 15 minutes after her arrival, an officer directed Brady into a room where Randall was located. According to Brady, she did not recall the officer asking Randall whether he was going to harm himself, nor did she recall the officer informing her of the statements Randall had made during the stop. Brady also testified that Randall never expressed any desire to harm himself but did express a desire to hire an attorney and challenge the OVI.

{¶5} Brady drove Randall to his apartment and returned to her residence. Approximately one hour later paramedics were dispatched to Randall's residence where they found him unresponsive. Shortly thereafter, Randall was pronounced dead as the result of an apparent overdose. Randall's death was ruled a suicide.

{¶6} Brady filed a complaint on October 13, 2006, against the Bucyrus Police Department, the city of Bucyrus, John Doe (an employee of Bucyrus Police Department), Jack Doe (an employee of Bucyrus Police Department), and Jane Doe (an employee of Bucyrus Police Department). Brady alleged that the defendants were negligent in failing to use reasonable and ordinary care with respect to Randall's safety. Absent from the complaint was an allegation that Brady could not discover the names of the fictitious parties. John Doe, Jack Doe, and Jane Doe were served with the summons and complaint by certified mail. The summons did not contain the phrase "name unknown."

{¶7} On May 1, 2007, Brady deposed Officer Wert.

{¶8} On May 2, 2008, Brady voluntarily dismissed her complaint, without prejudice.

{¶9} On April 30, 2009, Brady refiled her complaint against the Bucyrus Police Department, the city of Bucyrus, John Doe (an employee of Bucyrus Police Department), Jack Doe (an employee of Bucyrus Police Department), and Jane Doe (an employee of Bucyrus Police Department). The allegations in this complaint were identical to those in Brady's original compliant. Like her original complaint, this complaint contained no allegation that Brady could not discover the names of the fictitious parties. And as with the original complaint, John Doe,

Jack Doe, and Jane Doe were served with the summons and complaint by certified mail. The summons did not contain the phrase "name unknown."

{¶10} On October 7, 2009, Brady filed an amended complaint. The amended complaint was identical to Brady's complaint filed in April 2009, except for three changes. First, Brady alleged that the defendants acted in a wanton or reckless manner in regard to Randall's safety. Second, Brady alleged that the city and the police department did not have the proper policies and procedures in place to keep Randall safe. Last, Brady replaced John and Jack Doe with Officer Wert and Chief Teets. As she did with her preceding complaints, Brady served Officer Wert and Chief Teets with the summons and amended complaint by certified mail. The summons, again, did not contain the phrase "name unknown."

{¶11} In November 2009, defendants filed their answer, asserting sovereign immunity, qualified immunity, failure to state a claim upon which relief could be granted, statute of limitations, lack of personal and subject-matter jurisdiction, and insufficiency of process and service of process.

{¶12} In July 2010, defendants moved for summary judgment, arguing that Brady had set forth no evidence that any defendants had breached any duty owed to Randall. In support of their motion, defendants filed affidavits of Officer Wert and Officer Curtis Bursby, who were present on the night that Randall was pulled over. The defendants also argued that they were immune pursuant to R.C. Chapter

2744. Officer Wert and Chief Teets separately argued that they were not properly joined in the suit prior to the expiration of the statute of limitations.

{¶13} In August 2010, Brady filed a memorandum in opposition to summary judgment, arguing that there was a foreseeable risk that Randall posed a danger to himself and that there were issues of material fact concerning whether defendants failed to adequately address that risk. In support of this argument Brady relied on an expert report by Dr. Neal Dunsieth Jr., a forensic psychiatrist. In addition, Brady also contended that Officer Wert and Chief Teets were properly joined in the suit prior to the expiration of the statute of limitations.

{¶14} On September 14, 2010, the trial court granted defendants' motion for summary judgment on the sole ground that there were no genuine issues of material fact.

{¶15} It is from this judgment that Brady appeals, presenting the following assignment of error for our review.

### Assignment of Error No. I

> The trial court erred in granting summary judgment when genuine issues of material fact remain as to whether appellees' actions were done in a wanton or reckless manner.

{¶16} In her sole assignment of error, Brady contends that the trial court erred in finding that there were no genuine issues of material fact. We disagree.

{¶17} An appellate court reviews a summary judgment de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court used different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole, (1) there is no genuine issue as to any material fact and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." Id. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359.

{¶18} The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those

portions of the record that affirmatively support his argument. Id. at 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

{¶19} We begin by noting that Brady separately named the Bucyrus Police Department as a defendant. As a department of the city, which is also a named defendant, the police department is not sui juris and cannot be sued as a separate entity. Rather, it is subsumed within any judgment relating to the city.[1] See *Harris v. Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, ¶ 1, fn. 1, *Burgess v. Doe* (1996), 116 Ohio App.3d 61. (Lebanon Police Department dismissed as not being an entity with the capacity to be sued); *Wynn v. Butler Cty. Sheriff's Dept.* (Mar. 22, 1999), 12th Dist. No. CA98-08-175, 1999 WL 160942, at *2 (police departments not real parties in interest). Accordingly, our review will focus on Officer Wert, Chief Teets, and the city.

{¶20} In reviewing a summary judgment de novo, this court is not limited to determining whether genuine issues of material fact exist. This court may also consider whether the matter should have been dismissed on procedural grounds or any other basis presented in the motion before the trial court. This court may conduct this analysis even if the trial court did not rule on the procedural grounds.

---

[1] Brady concedes this fact on appeal.

Accordingly, before we determine whether the case at bar contains genuine issues of material fact, we first consider whether the case should have been dismissed on procedural grounds.

{¶21} Officer Wert and Chief Teets contend that they were never properly joined in the suit prior to the expiration of the statute of limitations. Officer Wert and Chief Teets asserted this defense in their answer to Brady's amended complaint, as well as their motion for summary judgment. Although the trial court did not address this defense, we elect to do so now.

{¶22} Determining whether Brady properly joined Officer Wert and Chief Teets prior to the expiration of the applicable statute of limitations requires Civ.R. 15(D) to be read in conjunction with Civ.R. 3(A). *Maggio v. Warren*, 11th Dist. No. 2006-T-0028, 2006-Ohio-6880, ¶ 44-47; *Harper v. New Philadelphia Mun. Court* (June 8, 1995), 10th Dist. No. 94APE12-1806, 1995 WL 347863, citing *Amerine v. Haughton Elevator Co.* (1989), 42 Ohio St.3d 57.

{¶23} Civ.R. 15(D) states:

> When the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words "name unknown," and a copy thereof must be served personally upon the defendant.

**{¶24}** Dividing Civ.R. 15(D) into its component parts, we find there to be five separate requirements, all of which must be satisfied in order to comply with the rule. First, the plaintiff cannot know the name of the defendant. *Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, ¶ 23. Second, the plaintiff must provide an adequate description of the defendant in its complaint. Id. at ¶ 34. This requirement facilitates service on the fictitiously named defendant. Id. Third, the plaintiff, in its complaint, must aver the fact that it could not discover defendant's name. Fourth, the summons must contain the phrase "name unknown." Last, the fictitious party must be personally served with the summons. In applying the foregoing requirements to the record, we find that Brady failed to comply with Civ.R. 15(D) in multiple respects.

**{¶25}** Civ.R. 3(A) states:

> A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D).

(Emphasis added.)

**{¶26}** Construing the foregoing civil rules in conjunction with the record, we find that Officer Wert and Chief Teets needed to be named and properly served on or before October 15, 2007, in order for them to be joined within the applicable

statute of limitations.[2]  See *Batchelder v. Young*, 11th Dist. No. 2005-T-0150, 2006-Ohio-6097.

**{¶27}** The statute of limitations in a wrongful-death action lasts two years from the date of decedent's death.  R.C. 2744.04(A) and 2125.02(D)(1).  Brady's son died on October 13, 2005.  Brady timely filed her original complaint on October 13, 2006.   In her original complaint, Brady named five defendants, two of which were named, and the other three of which were given fictitious names.  Pursuant to Civ.R. 3(A), Brady had one year from October 13, 2006, to perfect service on all five defendants.[3]  See *Burgess*, 116 Ohio App.3d at 68.  In order to perfect service on the fictitious parties Brady needed to comply with the service requirements of Civ.R. 15(D).  Pursuant to Civ.R. 15(D), service can be perfected upon a fictitious party only by personal service.  In addition, Civ.R. 15(D) also requires that the summons contain the phrase "name unknown."  Brady failed to comply with either requirement.  Instead, Brady served the summons, without the phrase "name unknown," by certified mail.  At no point within a year of filing her original complaint did Brady attempt personal service on the fictitious parties.  As a result, Brady had not commenced an action against the fictitious parties prior to

---

[2] Although October 15, 2007, is more than one year after the filing date of the original complaint, this is the last day on which Brady could have filed an amended complaint within the two-year limitations period, as October 13, 2007, was a Saturday.

[3] There is no issue as to whether the city or police department was properly served notice.

the expiration of the two-year statute of limitations on October 15, 2007. Accordingly, we find that the fictitious parties, who were later replaced with Officer Wert and Chief Teets, were never properly joined prior to the expiration of the two-year statute of limitations.

{¶28} We recognize that our analysis above does not fully comport with the analysis contained in *Baker v. Meijer Stores Ltd.*, 12th Dist. No. CA2008-11-136, 2009-Ohio-4681. In *Baker*, the court of appeals found that "if the name of the defendant is unknown, a plaintiff has the initial statute of limitations period, plus one year, to identify and properly serve a defendant." Id. at ¶ 42. Applying this logic to the case at bar, Brady would have had until October 13, 2008, to name and perfect service upon the fictitiously named defendant. Though we believe this statement is too broad, we find that applying *Baker*'s logic would not affect the outcome of the case at bar.

{¶29} Employing the logic set forth in *Baker*, Brady would have had until April 30, 2009, to properly serve Officer Wert and Chief Teets. Because Brady dismissed her original complaint prior to October 13, 2008, on May 2, 2008, Brady, pursuant to R.C. 2305.19(A), would have one year to refile her complaint. Brady refiled her complaint on April 30, 2009. Her complaint, however, was identical to her original complaint, naming the city, the police department, and three fictitious parties. On October 7, 2009, Brady filed an amended complaint,

-12-

which substituted Officer Wert and Chief Teets for two of the fictitious parties. This amendment occurred outside of the initial statute of limitations as well as the saving period. As a result, Brady's amended complaint, to be considered timely, must be found to relate back to the complaint filed on April 30, 2009. *Loescher v. Plastipak Packaging, Inc.*, 152 Ohio App.3d 479, 2003-Ohio-1850, ¶6.

{¶30} "When a plaintiff files an amended complaint pursuant to Civ.R. 15(D) and the applicable statutory time limit has expired, the determination of whether service has been properly effected on the formerly fictitious, now identified, defendant requires Civ.R. 15(D) to be read in conjunction with Civ.R. 15(C) and 3(A)." *LaNeve v. Atlas Recycling, Inc.*, 119 Ohio St.3d 324, 2008-Ohio-3921, ¶ 9, citing *Amerine*, 42 Ohio St.3d at 58. Stated differently, plaintiff's amended complaint, if filed outside the applicable statutory period, must first be found to comply with Civ.R. 15(D). Only if a plaintiff complies with Civ.R. 15(D) will a court consider the relation-back provision of Civ.R. 15(C). Id. at ¶ 11.

{¶31} In order to properly invoke Civ.R. 15(D), the plaintiff cannot know the defendant's name. *Erwin*, 2010-Ohio-2202, ¶23. In the case at bar, it is clear that Brady knew the names of Officer Wert and Chief Teets prior to filing her complaint. Brady deposed Officer Wert before voluntarily dismissing her original complaint. As for Chief Teets, Brady, in her appellate brief stated that she

deposed Chief Teets, but her statement, as well as the record, is unclear as to when that deposition took place. Despite this fact, it is clear to us, considering Chief Teets's position as chief of police, that Brady would have been aware of his name before or soon after she filed her original complaint. Because Brady knew or should have known the names of Officer Wert and Chief Teets, she did not have the option to designate them as John Doe defendants in her complaint.

{¶32} Even if Brady did not know the names of Officer Wert and Chief Teets, her complaint did not aver this fact. As discussed above, the plaintiff must aver that the plaintiff could not discover a defendant's name. Civ.R. 15(D). Brady's original compliant and her complaint filed on April 30, 2009, both failed to include that averment.

{¶33} Last, Officer Wert and Chief Teets were never properly or timely served notice. In order to properly serve a fictitious party, the summons must contain the phrase "name unknown" and the party must be personally served. Civ.R. 15(D). Brady failed to satisfy both of these requirements. As to the summons, none of those served on the fictitious parties contained the phrase "name unknown." As to the manner of service, each summons was served upon the fictitious parties by certified mail, not personal service.

{¶34} In failing to satisfy the foregoing requirements, Brady failed to comply with Civ.R. 15(D). As a result, Brady's amended complaint cannot relate

back to her complaint filed on April 30, 2009. *Erwin*, 2010-Ohio-2202, ¶ 35; See also *Schura v. Marymount Hosp.*, 8th Dist. No. 94359, 2010-Ohio-5246, ¶ 20; *Kramer v. Installations Unlimited, Inc.* (2002) 147 Ohio App.3d 350. Consequently, the filing date of the complaint controls in determining whether Brady timely served Officer Wert and Chief Teets.

{¶35} In determining whether Brady timely served Officer Wert and Chief Teets, we must apply Civ.R. 3(A). Because Brady's amended complaint does not relate back, she had one year from April 30, 2009, when she filed her complaint, to perfect service on Officer Wert and Chief Teets. Furthermore, Brady, pursuant to Civ.R. 15(D), could perfect service only by personal service. Brady did not make personal service upon Officer Wert or Chief Teets within a year of April 30, 2009, nor did any of the summons, served by certified mail, contain the phrase "name unknown." As a result, we find that even under *Baker*'s logic Officer Wert and Chief Teets were never properly served prior to the expiration of the applicable statute of limitations.

{¶36} Although she did not so so in her appellate brief, Brady, in her memorandum in opposition to summary judgment, contended that Officer Wert and Chief Teets were timely served and that despite her failure to effectuate personal service, they would not be prejudiced by being joined in the suit. We disagree on both accounts.

{¶37} First, Officer Wert and Chief Teets were not timely served. Brady, relying on Civ.R. 15(C), argued that she had one year from October 7, 2009, to properly serve Officer Wert and Chief Teets. As discussed above, however, Civ.R. 15(C) comes into consideration only if a plaintiff complies with Civ.R. 15(D). We found that Brady did not comply with Civ.R. 15(D); therefore Civ.R. 15(C)'s relation-back provision cannot apply. As a result, Brady had one year from October 13, 2006, or, under *Baker's* logic, one year from April 30, 2009, to properly and timely serve the fictitious parties, Officer Wert and Chief Teets. And since we found that Brady failed to properly and timely serve the fictitious parties, we find that Brady's first argument lacks merit.

{¶38} Second, Brady contended that Officer Wert and Chief Teets, because they were aware of the claims pending against them, would not be prejudiced by defending against those claims. In support, Brady refers to the answer filed in response to her amended complaint. Brady also refers to Officer Wert's deposition concerning Randall's arrest. Brady contends that these events demonstrate that Officer Wert and Chief Teets were sufficiently aware of the claims pending against them. As a result, Brady concluded that Officer Wert and Chief Teets would not be prejudiced by defending against those claims. We disagree.

{¶39} Faced with a similar issue, the Supreme Court of Ohio addressed the issue as follows:

> [T]he issue presented in this case is one of a failure to perfect service, which ultimately affects whether a court has personal jurisdiction over a defendant. The obligation to perfect service of process is placed *only on the plaintiff*, and the lack of jurisdiction arising from want of, or defects in, process or in the service thereof is ground for reversal. *Gliozzo v. Univ. Urologists of Cleveland, Inc.,* 114 Ohio St.3d 141, 2007-Ohio-3762, ¶ 16 (discussing the plaintiff's obligation to perfect service); *Ohio Elec. Ry. Co. v. United States Express Co.* (1922), 105 Ohio St. 331, 345-346 (discussing the effect of the failure to obtain service). Similarly, it is an established principle that actual knowledge of a lawsuit's filing and lack of prejudice resulting from the use of a legally insufficient method of service do not excuse a plaintiff's failure to comply with the Civil Rules. *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 157; *Haley v. Hanna* (1915), 93 Ohio St. 49, 52.
>
> In this regard, the Civil Rules are not just a technicality, and we may not ignore the plain language of a rule in order to assist a party who has failed to comply with a rule's specific requirements. *Gliozzo,* 114 Ohio St.3d 141, 2007-Ohio-3762, ¶ 16.

(Emphasis added.) *LaNeve,* 119 Ohio St.3d 324, 2008-Ohio-3921, ¶ 22-23. In light of the foregoing, we find that simply being aware of pending claims against oneself does not abrogate a plaintiff's obligation to perfect service upon a fictitious party. Accordingly, the answer filed in response to Brady's amended complaint as well as Officer Wert's deposition did not satisfy the notice requirement set forth in the Ohio Rules of Civil Procedure. Rather, Brady was

obligated to properly and timely perfect service upon Officer Wert and Chief Teets. Because Brady failed to satisfy this obligation, we find that Officer Wert and Chief Teets were not properly joined prior to the expiration of the applicable statute of limitations, and thus, as a matter of law, cannot be found liable.

{¶40} Accordingly, on grounds other than those relied upon by the trial court, we overrule Brady's sole assignment of error as it pertains to Officer Wert and Chief Teets.

{¶41} We now turn to the city. In her amended complaint, Brady alleged that the vity did not have the proper policies and procedures in place to keep Randall safe, that the city, as an entity and through respondeat superior, acted negligently with respect to Randall's safety, and that the city acted in a wanton and reckless manner. We disagree on all accounts.

{¶42} First, Brady does not address her allegation regarding the city's failure to maintain proper policies and procedures in her appellate brief. Moreover, Brady failed to address this claim in her memorandum in opposition to summary judgment.[4] Pursuant to App.R. 16(A)(7) and 12(A)(2), this court is not required to address arguments that have not been adequately presented for review or supported by proper authority. *State v. Watson*, 3rd Dist. No. 14-09-01, 2009-

---

[4] Tthe only portion of the record that speaks to the alleged inadequacy of the city's policy and procedures appears in Dunsieth's expert report. However, this fact is not sufficient to overcome the operation of App.R. 16(A)(7) and 12(A)(2). Evidence acts only to support arguments proffered in a party's motion or brief and cannot itself make up for the absence of such arguments.

Ohio-6713, ¶ 48. Accordingly, we elect not to address Brady's claim regarding the city's failure to maintain proper policies and procedures.

{¶43} As to Brady's remaining claims against the city, Brady fails to raise any arguments or point to any facts that the city, as an entity, acted negligently, recklessly, or wantonly with regard to Randall's safety. Instead, Brady consistently and exclusively argues that the actions of the police department's officers, particularly Officer Wert, were negligent, reckless, and wanton. As a result, we can only assume that Brady is attempting to impute Officer Wert's allegedly negligent, reckless, and wanton actions to the city.

{¶44} In addressing the city's liability we must consider R.C. Chapter 2744. R.C. Chapter 2744 governs political-subdivision liability and immunity. To determine whether a political subdivision is entitled to immunity under R.C. Chapter 2744, a reviewing court must engage in a three-tiered analysis. *Hubbard v. Canton Cty. School Bd. of Edn.,* 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 10, citing *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28. First, the court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. R.C. 2744.02 (A)(1); *Hubbard,* 2002-Ohio-6718, at ¶ 10. The general rule is that political subdivisions are not liable in damages. Id. If the entity is a political subdivision entitled to immunity, then the court must determine

whether any of the exceptions enumerated in R.C. 2744.02 (B) apply. *Hubbard,* 2002-Ohio-6718, at ¶ 12, citing *Cater* at 28. If any of the exceptions apply, then the political subdivision can reinstate its immunity by showing that an R.C. 2744.03 defense applies. *Cater,* at 28. If none of the exceptions apply, however, R.C. 2744.03's defenses need no consideration. *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities,* 150 Ohio App.3d 383, 2002-Ohio-6344, ¶ 26, citing *Cater* at 28.

{¶45} For the purposes of the immunity statutes, the city qualifies for general immunity because it is a political subdivision. R.C. 2744.01(F) ("'Political subdivision' means * * * a municipal corporation * * * responsible for governmental activities in a geographic area smaller than that of the state"). Governmental functions include "[t]he provision * * * of police * * * services or protection." R.C. 2744.01(C)(2)(a). Accordingly, we find that the city has satisfied the first tier and is entitled to immunity under R.C. 2744.02(A)(1).

{¶46} Moving to the second tier, R.C. 2744.02(B) removes the general statutory presumption of immunity for political subdivisions only under the following express conditions: (1) the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1), (2) the negligent performance of proprietary functions, R.C. 2744.02(B)(2), (3) the negligent failure to keep public roads open and in repair, R.C. 2744 .02(B)(3), (4) the negligence of employees occurring

within or on the grounds of certain buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4), and (5) express imposition of liability by statute, R.C. 2744.02(B)(5).

{¶47} Once general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions applies. *Maggio*, 2006-Ohio-6880, ¶ 38. Here, Brady has failed to meet this burden. Her appellate brief, as well as her motion in opposition to summary judgment, is devoid of any arguments demonstrating the applicability of one of the enumerated exceptions in R.C. 2744.02(B). Despite this fact, we conducted an independent review of the exceptions and found that none of the exceptions apply in the case at bar. Accordingly, we need not reach the third tier of the analysis. See *Estate of Ridley*, 2002-Ohio-6344, ¶ 26.

{¶48} Because we find that the city is a political subdivision, that Officer Wert, during Randall's arrest, was performing a governmental function, and that none of the exceptions enumerated in R.C. 2744.02(B) apply, we find that the city retains its immunity. See *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 71. This immunity shields the city from "damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of * * * an employee of the political subdivision in connection with a governmental * * * function." R.C. 2744.02(A)(1). Under this provision, a

political subdivision's immunity, if it is found to survive, has no limit when it comes to the nature of an employee's actions or omissions. Accordingly, once a court finds that none of the provisions of R.C. 2744.02 (B)(1 through 5) apply, the political subdivision will be shielded from the act or omission of its employees, whether the act or omission be wanton, reckless, or negligent in nature. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994)*,* 70 Ohio St.3d 450, 452 (a political subdivision retains its cloak of immunity from lawsuits stemming from employees' negligent or reckless acts); *Gomez v. Noble Cty. Children Servs.*, 7th Dist. No. 09 NO 361, 2010-Ohio-1538, ¶ 40-41. In light of the foregoing, we find that Brady can prove no set of facts in support of her claims that the city acted in a negligent, reckless, and wanton manner with respect to Randall's safety. Accordingly, the trial court did not err in granting the city summary judgment.

{¶49} In light of the foregoing, we overrule Brady's sole assignment of error.

{¶50} Having found no error prejudicial to Brady herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON, J., concurs.

SHAW, J., concurs in judgment only.