[Cite as *Conner v. Wright State Univ.*, 2013-Ohio-5701.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lisa Conner, Admr., etc., et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 13AP-116 |
| v. | : | (C.C. No. 2012-02887) |
| Wright State University, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 24, 2013

*Poling Law* and *Paul-Michael La Fayette*, for appellants.

*Michael DeWine*, Attorney General, *Peter E. DeMarco* and *Emily M. Simmons*, for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, Lisa and Michael Conner ("appellants"), appeal from a judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Wright State University ("WSU") on their claims related to the death of their son, Nathan Conner. Because we conclude that WSU was entitled to summary judgment because it had statutory immunity on appellants' claims, we affirm.

{¶ 2} In January 2008, Nathan Conner ("Nathan"), was a second-year student at WSU. On January 15, 2008, officers from WSU's police department, including Sergeant James Facemire and Officer Jesse Harrod, were dispatched to Nathan's apartment following a call indicating that Nathan may have overdosed on prescription medication (the "January incident"). Nathan was visibly upset and admitted to the officers that he took several types of prescription medication. The officers contacted medics, and Nathan

was transported to a hospital for treatment. The officers also contacted appellants and advised them where Nathan was being taken. A few days after the January incident, Nathan was assessed by WSU's counseling and wellness services department.

{¶ 3} After the January incident, Nathan stayed at his parents' house for approximately one week. Nathan told his parents that he wished to return to school at WSU. On his return to school, Nathan was required to participate in counseling through WSU's counseling and wellness services department.

{¶ 4} In the early morning of March 21, 2008, WSU's police department received an anonymous call advising that Nathan was going to harm himself using a container of helium. Multiple WSU police officers, including Sergeant Facemire and Officer Harrod, (collectively "WSU police officers") responded to the call. The WSU police officers spoke with Nathan and assessed his condition. Nathan admitted that he had a helium container but explained that he planned to use it to blow up balloons for a party. Nathan told the officers that he had thoughts of harming himself during the previous week but that he felt better about his situation. After speaking with Nathan, the WSU police officers determined that he was not a threat to himself or others. Appellants assert that sometime after the WSU police officers left, Nathan committed suicide through asphyxiation using helium.

{¶ 5} Appellants filed a complaint in the Court of Claims of Ohio naming WSU, the WSU police department, the WSU department of public safety, and multiple WSU police officers as defendants. Appellants sought relief in their individual capacities and Lisa Conner asserted claims in her capacity as administrator of Nathan's estate. Appellants asserted claims for negligence, wrongful death, respondeat superior liability, survivorship, and loss of consortium, asserting that WSU and the other defendants failed to ensure Nathan's safety. The Court of Claims issued a pre-screening order dismissing the individual police officers on the grounds that only state agencies and instrumentalities could be defendants in original actions in the Court of Claims. The Court of Claims also deleted the WSU police department and WSU department of public safety from the case caption as surplusage.

{¶ 6} WSU moved for summary judgment on all claims, asserting, in part, that it had statutory immunity from civil liability for claims relating to the WSU police officers'

actions. Appellants argued that WSU did not have statutory immunity under an exception providing that the relevant portion of the statute did not apply where there was a "special relationship" with the injured party. The trial court granted WSU's motion for summary judgment, concluding that the evidence did not demonstrate that there was a special relationship between WSU and Nathan or between WSU and appellants.

{¶ 7} Appellants appeal from the trial court's judgment, assigning two errors for this court's review:

> I. THE TRIAL COURT ERRED IN DETERMINING THAT NO SPECIAL RELATIONSHIP EXISTED TO PROTECT APPEL-LANT'S DECEDENT FROM APPELLEE'S NEGLIGENCE IN THE PERFORMANCE OF APPELLEE'S PUBLIC DUTY. CONSTRUING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO APPELLANTS, REASONABLE MINDS COULD ONLY CONCLUDE THAT A SPECIAL RELATION-SHIP EXISTED BETWEEN APPELLANT'S DECEDENT AND APPELLEE.
>
> II. GIVEN THE DISPUTED FACTS RELATIVE TO THE REASONABLENESS OF APPELLEE LAW ENFORCEMENT OFFICERS' ACTIONS AND BASED ON THE TOTALITY OF THE CIRCUMSTANCES, THE TRIAL COURT ERRED IN DETERMINING THAT APPELLEE'S OFFICERS EXER-CISED REASONABLE CARE AND JUDGMENT IN MAKING A DECISION THAT APPELLANT'S DECEDENT DID NOT POSE AN IMMEDIATE THREAT TO HIMSELF AND THAT THERE WAS NOT FORESEEABLE RISK OF HARM.

{¶ 8} WSU asserts the following cross-assignments of error:

> 1. Whether WSU officers had a special relationship with the decedent.
>
> 2. Whether the decedent's intentional actions were the sole proximate cause of his death.
>
> 3. Whether Appellant's claims are barred by the doctrine of primary assumption of the risk.

{¶ 9} We review the trial court's grant of summary judgment de novo. *Capella III, L.L.C. v. Wilcox,* 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.,* 93 Ohio St.3d 547, 548 (2001). "De novo appellate

review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal citations omitted.) *Holt v. State,* 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate where "the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. In ruling on a summary judgment motion, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Pilz v. Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 10} WSU asserts that it has statutory immunity from civil liability on any claims arising from the WSU police officers' actions because they were performing a "public duty" when they responded to the March 21, 2008 call regarding Nathan. Appellants argue that there was a "special relationship" between WSU and Nathan which creates an exception to the public duty immunity. In the proceeding below, the trial court concluded that WSU was entitled to summary judgment because appellants failed to establish that there was a genuine issue of material fact regarding one of the elements required to establish a special relationship. Under the de novo standard of review, we must examine whether appellants demonstrated a genuine issue of material fact as to each element of the special relationship test.

{¶ 11} By statute, the state is generally immune from liability in a civil action based on the performance or nonperformance of a "public duty."[1] R.C. 2743.02(A)(3)(a). Public duty is defined to include law enforcement or emergency response activity. R.C. 2743.01(E)(1)(a). Public duty immunity does not apply to the state's action, however, where a "special relationship" can be established between the state and an injured party.

---

[1] Under the Court of Claims Act, the state is defined to include "the state of Ohio * * * and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state." R.C. 2743.01(A). WSU is a state university created pursuant to R.C. 3352.01, and therefore, for the purposes of this statute, falls within the definition of the state. *See Collins v. Univ. of Cincinnati*, 3 Ohio App.3d 183, 184 (1st Dist.1981) ("Under the [Court of Claims] Act, a state university is considered to be an instrumentality of the state, thus amenable to suit.").

R.C. 2743.02(A)(3)(b). That statute sets forth a four-part test for establishment of a "special relationship" that will overcome the state's public duty immunity:

> A special relationship under [R.C. 2743.02(A)(3)(b)] is demonstrated if all of the following elements exist:
>
> (i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;
>
> (ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;
>
> (iii) Some form of direct contact between the state's agents and the injured party;
>
> (iv) The injured party's justifiable reliance on the state's affirmative undertaking.

{¶ 12} The trial court concluded that the WSU police officers were performing a public duty when they were dispatched to Nathan's apartment on March 21, 2008. It appears that appellants do not dispute this conclusion because their arguments on appeal focus on the issue of whether a special relationship existed. The WSU police officers were responding to an anonymous call advising that Nathan was going to harm himself. We conclude that this constitutes law enforcement or emergency response activity, and, therefore, the WSU police officers were performing a public duty when they went to Nathan's apartment. Under R.C. 2743.02(A)(3)(a), WSU is immune from civil liability for claims arising from the WSU police officers' actions in performing this public duty unless appellants can establish that a special relationship existed between WSU and Nathan.

{¶ 13} In its motion for summary judgment, WSU conceded that the WSU police officers had direct contact with Nathan. This satisfies the element set forth in R.C. 2743.02(A)(3)(b)(iii). Accordingly, our analysis will focus on the remaining three elements of the special-relationship test. Because appellants must establish the existence of all of the statutory elements, WSU need only demonstrate that appellants failed to demonstrate a genuine issue of material fact regarding one of the elements in order to obtain summary judgment.

{¶ 14} We begin with the question of whether WSU assumed an affirmative duty to act on Nathan's behalf. R.C. 2743.02(A)(3)(b)(i). The trial court concluded that appellants presented a genuine issue of material fact regarding this issue. Appellants suggest that there were multiple ways WSU assumed an affirmative duty to act on behalf of Nathan. The WSU police officers were dispatched to Nathan's apartment just before 2:00 a.m. on March 21, 2008. At the time, WSU's department of public safety had a standard operating procedure specifying the protocol to be used when its personnel responded to an incident between 5:00 p.m. and 8:30 a.m., where a student exhibited characteristics indicating that he might be experiencing a mental health crisis (the "on-call pager protocol"). Appellants argue that the existence of the on-call pager protocol demonstrates that WSU assumed an affirmative duty to act on behalf of Nathan, specifically citing language in the protocol stating that it created a duty for each employee to abide by its requirements.

{¶ 15} We conclude that the existence of the on-call pager protocol does not demonstrate that WSU assumed an affirmative duty to act on Nathan's behalf. Police officers have a general duty to enforce the law and protect the public. *See, e.g., Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 211 (1991) (referring to "[a] police officer's continuing duty to obey and enforce the criminal law, even when off duty"); *Luketic v. Univ. Circle, Inc.*, 134 Ohio App.3d 217, 223 (8th Dist.1999) (referring to off-duty university police officer's "legal and moral duty, pursuant to statutory authority and his oath as a police officer, to protect the public and attempt to prevent a violent felony"). The on-call pager protocol provided one set of procedures for the WSU police officers to use when performing this general duty. The fact that WSU's department of public safety implemented this protocol did not constitute the assumption of an affirmative duty to act on any particular individual's behalf. *See, e.g., Burgess v. Doe*, 116 Ohio App.3d 61, 67 (12th Dist.1996) ("It is well established that no special relationship exists simply because a member of the general public requests assistance from the police."); *Drexler v. Greater Cleveland Regional Transit Auth.*, 80 Ohio App.3d 367, 371-72 (8th Dist.1992) (concluding that a regional transit authority's maintenance of a security force did not create a special duty or special relationship with an individual who was abducted from one of the transit authority's stations).

{¶ 16} Although the on-call pager protocol was not sufficient to demonstrate that WSU assumed an affirmative duty to act on Nathan's behalf, we conclude that there was other evidence that, when construed in appellants' favor, could establish an affirmative undertaking by WSU or its agents. One of the police reports describing the events of March 21 indicated that one of the WSU police officers told Nathan that "if he needed someone to talk to that he could call the police department and [they] would be more than happy to help him out." (Mar. 21. 2008 WSU Police Department Supplement Report of Officer James Facemire.) Construing this evidence in favor of appellants, this statement could be taken as a promise to act specifically on Nathan's behalf, beyond the WSU police officers' general law enforcement or emergency response duties.

{¶ 17} In addition to the officer's statement on March 21, 2008, there is evidence suggesting that WSU may have formed a special relationship with Nathan when he returned from school after the January incident. Lisa Conner testified at her deposition that Nathan was admitted back into school after the January incident under certain guidelines, which included participating in counseling through one of WSU's departments. She also testified that she believed that, after returning to school, Nathan was diagnosed as having bipolar disorder and was placed on medication under the care of a counselor affiliated with WSU. Lisa Conner further testified that she and Nathan attended a meeting in February 2008 where officials from WSU indicated that Nathan was not meeting the required conditions for continued residence in university housing. The evidence attached to appellants' memorandum in opposition to summary judgment includes a record showing that Nathan attended multiple appointments with WSU's counseling and wellness services department between January 18 and March 19, 2008.

{¶ 18} Construing this evidence in favor of appellants, reasonable minds could come to different conclusions as to whether WSU assumed an affirmative duty to act on Nathan's behalf by entering into a program of treatment and counseling for him. Therefore, WSU cannot demonstrate that there was no genuine issue of material fact as to whether WSU assumed an affirmative duty, through promises or actions, to act on Nathan's behalf. We do not conclude that there was a special relationship between WSU and Nathan but, rather, that appellants have presented evidence establishing that there is a genuine issue of material fact as to this element of the special-relationship test.

{¶ 19} Next, we turn to the issue of whether WSU's agents had knowledge that inaction could lead to harm. R.C. 2743.02(A)(3)(b)(ii). The anonymous caller who contacted WSU's police department indicated that Nathan was going to harm himself through the use of helium. Officer Harrod and Sergeant Facemire each testified that they asked Nathan about this and that he admitted to having helium in his possession. Officer Harrod testified that Nathan admitted that he had thoughts of harming himself earlier in week but stated that he felt better about his situation. Additionally, both Officer Harrod and Sergeant Facemire had been among the responding officers during the January incident, when Nathan was transported for treatment. Officer Harrod testified that, when responding to the March 21 call, he remembered that Nathan had been previously hospitalized. Because the WSU police officers were aware of the method by which Nathan allegedly intended to harm himself, confirmed that he had that method at his disposal, and had prior knowledge of at least one occasion when Nathan took actions that could have resulted in harm to himself, reasonable minds could conclude that the WSU police officers knew that inaction could lead to harm. Accordingly, WSU could not demonstrate that there was no genuine issue of material fact as to this element of the special-relationship test.

{¶ 20} Finally, assuming for purposes of analysis that WSU assumed an affirmative duty to act on Nathan's behalf, we turn to the question of whether Nathan justifiably relied on this undertaking. R.C. 2743.02(A)(3)(b)(iv). The trial court concluded that WSU was entitled to summary judgment because there was no genuine issue of material fact that Nathan justifiably relied on WSU's undertaking to act on his behalf. Based on our review of the evidence, we reach the same conclusion. Both Officer Harrod and Sergeant Facemire testified that Nathan's demeanor on March 21 was substantially different than during the January incident. They testified that, on March 21, Nathan was calm, relaxed, and joked with them about the television show he was watching when they arrived; whereas, in January he had been crying and obviously upset. Sergeant Facemire testified that Nathan explained that, in January, he was misdiagnosed and on the wrong medication but that subsequently he had been diagnosed properly and placed on the correct medication. There is no evidence that Nathan expressly or implicitly requested assistance from or otherwise relied on the WSU police officers on March 21, 2008.

Moreover, even though Nathan was undergoing counseling and treatment through WSU's counseling and wellness services department, there is no evidence demonstrating that Nathan relied on any relationship resulting from this treatment. Thus, there was no genuine issue of material fact as to whether Nathan justifiably relied on WSU's affirmative undertaking to act on his behalf.

{¶ 21} Appellants argue that justifiable reliance is a factual inquiry that is inappropriate for summary judgment. However, as explained above, we conclude that appellants failed to demonstrate that Nathan relied on WSU for his care. Appellants also suggest that the justifiable-reliance element should not apply in a situation such as this, where an individual is potentially experiencing a mental health crisis.[2] The statute contains no exceptions for particular conditions and provides that all four elements, including justifiable reliance, must be demonstrated in order to establish the existence of a special relationship. We are limited to applying the statute as written. *See Skilton v. Perry Loc. School Dist. Bd. of Edn.*, 102 Ohio St.3d 173, 2004-Ohio-2239, ¶ 14 ("It is not the role of the courts to question the public policy values of a legislatively enacted statutory scheme. We are limited to applying the statutes as written and passing on the constitutionality thereof.").

{¶ 22} Based on our de novo review of the evidence presented below, we conclude that WSU demonstrated that there was no genuine issue of material fact as to whether Nathan justifiably relied on an affirmative undertaking by WSU to act on his behalf. Establishing the existence of a special relationship between the state and an injured party requires demonstrating all four statutory elements, including justifiable reliance. Because appellants failed to establish that Nathan justifiably relied on an affirmative undertaking by WSU, it is entitled to judgment as a matter of law in its favor on the issue of whether a special relationship existed between WSU and Nathan. Because there was no special relationship between WSU and Nathan and because the WSU police officers were engaged in a public duty, WSU is immune from liability under R.C. 2743.02(A)(3)(a) for any civil claims arising from the officers' actions.

---

[2] Appellants did not explicitly make this argument in their brief, but appellants' counsel asserted it at oral argument.

{¶ 23} Although appellants' first assignment of error asserts that a special relationship existed between WSU and Nathan, appellants also appear to suggest that a special relationship existed between themselves, as Nathan's parents, and WSU. We conclude that there was no evidence of any assumption of an affirmative duty by WSU to act on behalf of appellants. Appellants point to the fact that the responding officers contacted them after the January incident. However, this notification was merely a matter of informing parents of a student's hospitalization. It did not constitute an assumption of an affirmative duty to specifically contact appellants any time there was an incident involving Nathan. As explained above, to the extent that the WSU police officers' actions on March 21 could be construed as constituting an assumption of an affirmative duty, that duty was to Nathan, not to his parents. Likewise, to the extent that WSU's actions in allowing Nathan to return to school and putting him in a counseling and treatment program could be considered as assuming an affirmative duty, that duty would have been owed to Nathan. Any benefit accruing to Nathan's parents would have been tangential and would not create an affirmative duty to act on their behalf. Absent any evidence that WSU assumed an affirmative duty toward appellants in their capacity as Nathan's parents, we need not consider the other three elements of the special-relationship test. We conclude that appellants failed to demonstrate any special relationship existed between themselves and WSU that would overcome the public duty immunity for the actions of the WSU police officers.

{¶ 24} Accordingly, we overrule appellants' first assignment of error.

{¶ 25} In appellants' second assignment of error, they assert that the trial court erred by concluding that the WSU police officers exercised reasonable care and judgment in deciding that Nathan was not an immediate threat to himself. The question of whether the WSU police officers exercised reasonable care goes to the merits of appellants' negligence claims. *See, e.g., Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-357, 2006-Ohio-2531, ¶ 10-14. However, as explained above, the trial court granted summary judgment in WSU's favor on the negligence claims and all of appellants' other claims. Therefore, the trial court's statement regarding whether the WSU police officers exercised reasonable care was not necessary for resolution of the case and constituted dictum. *See Sellers v. Williams*, 105 Ohio App. 332, 334 (4th Dist.1957) ("These opinions

expressed by the courts were not necessary to the decisions of the courts in these cases, and are, therefore, obiter dictum, merely an expression of the view of the judge rendering the opinion."). Because we conclude that the trial court did not err in granting summary judgment in favor of WSU on the issue of whether WSU was entitled to statutory immunity and affirm the decision on that basis, appellants' second assignment of error is moot.

{¶ 26} Finally, we turn to WSU's cross-assignments of error. WSU did not file a cross-appeal; however, a cross-appeal is not required where a party intends to defend an appealed judgment on a ground other than that relied on by the trial court but does not seek to change the judgment. App.R. 3(C)(2). Under its first cross-assignment of error, WSU argues that the WSU police officers did not have a special relationship with Nathan. The substance of this cross-assignment of error is resolved through our decision on appellants' first assignment of error; therefore, we need not address it further here. In its second and third cross-assignments of error, WSU argues for alternative grounds to support the trial court's judgment. Because we have overruled appellants' first assignment of error, we need not address these cross-assignments of error because they are moot.

{¶ 27} For the foregoing reasons, appellants' first assignment of error is overruled, and their second assignment of error is rendered moot. WSU's cross-assignments of error are also rendered moot. We affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER and GREY, JJ., concur.

GREY, J., retired, of the Fourth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____