[Cite as *Williams v. Shawnee Twp.*, 2023-Ohio-251.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

DEE DEE WILLIAMS,

    PLAINTIFF-APPELLANT,

    -and-                           CASE NO. 1-22-34

TIKASHA DAWSON,

    PLAINTIFF-APPELLEE,

    v.                                 O P I N I O N

SHAWNEE TOWNSHIP, ET AL.,

    DEFENDANTS-APPELLEES.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2021 0030**

**Judgments Affirmed**

**Date of Decision: January 30, 2023**

---

APPEARANCES:

    *Jessica M. Bacon* for Appellant

    *Dawn M. Frick and Nathaniel W. Rose* for Appellees,
        Shawnee Township, et al.

**ZIMMERMAN, J.**

**{¶1}** Plaintiff-appellant, Dee Dee Williams ("Williams"), appeals the May 3 and 4, 2022 judgments of the Allen County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Shawnee Township, the Shawnee Township Police Department, and Sergeant Adam Hoehn ("Sergeant Hoehn"), and dismissing her claim against Shawnee Township (along with the Shawnee Township Police Department) and Sergeant Hoehn. We affirm.

**{¶2}** This matter stems from an automobile accident on February 25, 2019 between a stolen black Ford Mustang (owned by Steven Sasada ("Sasada")) and the vehicle operated by Williams (in which plaintiff-appellee, Tikasha Dawson ("Dawson"), was a passenger), following a police pursuit of the stolen vehicle by Sergeant Hoehn. On February 3, 2021, Williams and Dawson (collectively, "plaintiffs") filed a complaint in the trial court alleging negligence against Shawnee Township, the Shawnee Township Police Department, Sergeant Hoehn, and Sasada. The plaintiffs' complaint further alleged claims of negligent misrepresentation and negligent procurement of insurance against Acceptance Insurance Company and Acceptance Insurance Agency (collectively, "Acceptance Insurance"). Acceptance Insurance filed its answer on March 12, 2021.

**{¶3}** Because neither Shawnee Township nor the Shawnee Township Police Department timely filed an answer to the plaintiffs' complaint, the plaintiffs filed a

motion for default judgment on April 13, 2021. However, Shawnee Township, the Shawnee Township Police Department, and Sergeant Hoehn filed a motion for leave to file an answer instanter under Civ.R. 6(B)(2) on April 19, 2021, which the trial court granted the next day. As a result, the plaintiffs withdrew their motion for default judgment.

{¶4} Sasada filed his answer on May 20, 2021. On June 10, 2021, Sasada filed a motion for a judgment on the pleadings under Civ.R. 12(C). The plaintiffs filed a memorandum in opposition to Sasada's motion on June 29, 2021. On June 30, 2021, the trial court granted Sasada's motion for a judgment on the pleadings under Civ.R. 12(C) and dismissed the plaintiffs' claim against Sasada with prejudice.

{¶5} On March 29, 2022, Shawnee Township, the Shawnee Township Police Department, and Sergeant Hoehn filed a motion for summary judgment. In their motion for summary judgment, Shawnee Township (along with the Shawnee Township Police Department) alleged that it benefits from political-subdivision immunity under R.C. 2744.02(B)(1)(a) because Sergeant Hoehn did not operate its motor vehicle (while responding to an emergency call) using willful or wanton misconduct. Likewise, Sergeant Hoehn argued that summary judgment is proper as to him because there is no genuine issue of material fact that he is entitled to statutory immunity under R.C. 2744.03(A)(6). Importantly, even though the trial

court provided the plaintiffs an extension of time to respond to Shawnee Township, the Shawnee Township Police Department, and Sergeant Hoehn's motion for summary judgment, the plaintiffs did not timely respond.

**{¶6}** Consequently, on May 3, 2022, the trial court granted summary judgment in favor of Shawnee Township (including the Shawnee Township Police Department) after concluding that that it was entitled to political-subdivision immunity under R.C. 2744.02(B)(1)(a) because the plaintiffs "failed to demonstrate the existence of a genuine issue of [material] fact as to whether [Sergeant] Hoehn's operation of his police cruiser during the pursuit constituted willful or wanton misconduct." (Doc. No. 59). Moreover, the trial court granted summary judgment in favor of Sergeant Hoehn after concluding that there is no genuine issue of material fact that he is entitled to statutory immunity under R.C. 2744.03(A)(6). Significantly, since the plaintiffs' claims against Acceptance Insurance remained pending, the trial court certified that there is no just reason for delay under Civ.R. 54(B).

**{¶7}** Nevertheless, that same day, the plaintiffs filed their memorandum in opposition to Shawnee Township, the Shawnee Township Police Department, and Sergeant Hoehn's motion for summary judgment. As a result, the plaintiffs filed a motion for reconsideration of the trial court's decision granting summary judgment in favor of Shawnee Township (including the Shawnee Township Police

Department) and Sergeant Hoehn. On May 4, 2022, out of an "overabundance of fairness," the trial court reconsidered its decision granting summary judgment in favor Shawnee Township (including the Shawnee Township Police Department) and Sergeant Hoehn, yet reached the same result (even after considering the plaintiffs' memorandum in opposition to Shawnee Township, the Shawnee Township Police Department, and Sergeant Hoehn's motion for summary judgment). (Doc. No. 63). Since the trial court disposed of the plaintiffs' claims against Acceptance Insurance in a separate entry, the trial court certified that there is no just reason for delay under Civ.R. 54(B).

{¶8} Williams filed her notice of appeal on May 27, 2022. She raises one assignment of error for our review.

### Assignment of Error

**The Trial Court improperly granted summary judgment in favor of Shawnee Township Police Dept [sic] and Sergeant Hoehn where Plaintiffs presented evidence that Sargent Hoehn operated a motor vehicle in a willful, wanton, and/or illegal (reckless) manner and is not entitled to immunity.**

{¶9} In her sole assignment of error, Williams argues that the trial court erred by granting summary judgment in favor of Shawnee Township (along with the Shawnee Township Police Department) and Sergeant Hoehn because there are genuine issues of material fact they are excluded from political-subdivision immunity. Specifically, Williams argues that there are genuine issues of material

fact that Shawnee Township (along with the Shawnee Township Police Department) is excepted from its political-subdivision immunity under R.C. 2744.02(B)(1). Furthermore, Williams argues that there are genuine issues of material fact that Sergeant Hoehn is disqualified from statutory immunity under R.C. 2744.03(A)(6).

*Standard of Review*

**{¶10}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶11}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions

of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292.

"The nonmoving party must then rebut with specific facts showing the existence of

a genuine triable issue; he may not rest on the mere allegations or denials of his

pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

**{¶12}** As an initial matter, Williams named the Shawnee Township Police

Department as a defendant. As a department of Shawnee Township, which is also

a named defendant, "the police department is not sui juris and cannot be sued as a

separate entity." *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-

2460, ¶ 19 (3d Dist.). Thus, the Shawnee Township Police Department is subsumed

within any judgment relating to the township. *Accord id.* Therefore, our review is

limited to whether the trial court erred by granting summary judgment in favor of

Shawnee Township and Sergeant Hoehn. *See id.*

**{¶13}** "'R.C. Chapter 2744 addresses when political subdivisions, their

departments and agencies, and their employees are immune from liability for their

actions.'" *Green v. Columbus*, 10th Dist. Franklin No. 15AP-602, 2016-Ohio-826,

¶ 17, quoting *Gibbs v. Columbus Metro. Hous. Auth.*, 10th Dist. Franklin No. 11AP-

711, 2012-Ohio-2271, ¶ 8. Therefore, we will begin our analysis by addressing

Shawnee Township's political-subdivision immunity under R.C. 2744.02(B)(1).

Then, we will address Sergeant Hoehn's statutory immunity under R.C. 2744.03(A)(6).

*Shawnee Township*

**{¶14}** "The statutory framework requires courts to employ a three-tier analysis to determine whether a political subdivision is entitled to immunity under R.C. 2744.02." *Id.* "The first tier of the sovereign-immunity analysis involves the general grant of immunity to political subdivisions by R.C. 2744.02(A)(1) * * * ." *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 21. "Under the first tier, a court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or a proprietary function." *Deitz v. Harshbarger*, 3d Dist. Shelby No. 17-16-21, 2017-Ohio-2917, ¶ 19, citing *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 14 and R.C. 2744.02(A)(1). "Although political subdivisions are generally immune from liability incurred in performing a governmental or proprietary function, that immunity is not absolute." *Id.*, citing *Cramer* at ¶ 14 and R.C. 2744.02(B).

**{¶15}** "The second tier of the sovereign-immunity analysis involves determining whether any of the five exceptions to immunity that are listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *McConnell* at ¶ 22. "In cases involving the alleged negligent operation of a motor vehicle by an

employee of a political subdivision, the second tier of the analysis includes consideration of whether the specific defenses of R.C. 2744.02(B)(1)(a) through (c) apply to negate the immunity exception of R.C. 2744.02(B)(1)." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 14. Importantly, "R.C. 2744.02(B)(1)(a) provides the political subdivision a 'full defense' to liability when '[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct.'" *Carozza v. Lusk*, 12th Dist. Butler No. CA2021-12-155, 2022-Ohio-3272, ¶ 13, quoting R.C. 2744.02(B)(1)(a). "This provision applies 'when an officer is responding to a call to duty, which includes responding to a dispatch for assistance out of a professional obligation to do so.'" *McConnell* at ¶ 26, quoting *Smith* at ¶ 40.

{¶16} Finally,

> [i]f any one of the five exceptions to immunity in R.C. 2744.02(B) applies and if any defenses that may be asserted by the political subdivision under R.C. 2744.02(B)(1) do not apply, then the third tier of the sovereign-immunity analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply to reinstate the political subdivision's immunity.

*Id.* at ¶ 23.

{¶17} "'Under the Political Subdivision Tort Liability Act, immunity is an affirmative defense.'" *Deitz*, 2017-Ohio-2917, at ¶ 20, quoting *Green*, 2016-Ohio-826, at ¶ 18. "'Accordingly, the burden of proof is on the political subdivision to

establish general immunity.'" *Id.*, quoting *Green* at ¶ 18. Under the first tier of the political-subdivision-immunity analysis, the parties do not dispute that Shawnee Township is entitled to general immunity under R.C. 2744.02(A). That is, the parties agree that the Shawnee Township is a political subdivision and that "the operation of a police department and the enforcement of the law are governmental functions." *Harris v. Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, ¶ 13 (8th Dist.). *See* R.C. 2744.01(C)(2) (stating that "[t]he provision * * * of police, fire, emergency medical, ambulance, and rescue services or protection" is a governmental function). *See also McConnell* at ¶ 24 (holding that "operating a police cruiser in response to an emergency call is a governmental function").

{¶18} Turning to the second tier of the political-subdivision-immunity analysis, Williams contends that genuine issues of material fact remain as to whether the immunity exception under R.C. 2744.02(B)(1) exposes Shawnee Township to liability. Specifically, Williams advances two theories which she contends negates the immunity exception under R.C. 2744.02(B)(1). One theory put forth by Williams is that Shawnee Township is excepted from its political subdivision liability since it "is liable for their [sic] negligence in the hiring, training, and supervision of their [sic] patrol officer as well as dispatcher employees." (Appellant's Brief at 12). However, "R.C. 2744.02(B) does not contain an independent exception to a political subdivision's immunity under R.C.

2744.02(A)(1) for the failure to train, supervise, or enforce its own policies." *Glenn v. Columbus*, 10th Dist. Franklin No. 16AP-15, 2016-Ohio-7011, ¶ 11, citing *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 33 (concluding that "there is no exception to [a city's] immunity for the training, supervision, or discipline of police officers").

{¶19} More specifically,

> the plain language of the statute demonstrates that the political subdivision's liability depends on the *employee's* actions in driving the vehicle: whether the employee negligently operated the vehicle, whether the employee was within the scope of his or her employment and authority, whether the employee was responding to an emergency call, and whether the employee's operation of the vehicle constituted willful or wanton misconduct.

(Emphasis sic.) *McConnell*, 158 Ohio St.3d 388, 2019-Ohio-4740, at ¶ 29. In other words, "R.C. 2744.02(B)(1)(a) makes plain that it is the driver's conduct and culpability in operating a vehicle—not the political subdivision's—that determines whether the political subdivision may be held liable under the statute." *Id.* Consequently, this portion of Williams's argument is without merit.

{¶20} The second theory advanced by Williams is whether the defense set forth under R.C. 2744.02(B)(1)(a) negates the immunity exception of R.C. 2744.02(B)(1). Specifically, Williams argues that there are genuine issues of material fact as to whether Sergeant Hoehn was operating a motor vehicle while

responding to an emergency call and whether his operation of the police cruiser constituted wanton misconduct.

**{¶21}** An emergency call "means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A). Importantly, "[t]he statutory definition does not limit 'emergency calls' to occasions of inherent danger or danger to human life." *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶ 24 (9th Dist.), citing *Moore v. Columbus*, 98 Ohio App.3d 701, 706 (1994). Rather, "[a]s defined in R.C. 2744.01(A), [an] 'emergency call' involves a situation to which a response by a peace officer is required by the officer's professional obligation." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, syllabus.

**{¶22}** Here, there is no genuine issue of material fact that Sergeant Hoehn was responding to an emergency call—that is, there no genuine issue of material fact that Sergeant Hoehn was responding to a police dispatch or situation to which a response was required by his professional obligation. *See Anderson v. Westlake*, 9th Dist. Lorain No. 19CA011512, 2021-Ohio-4582, ¶ 39; *Horton v. Dayton*, 53 Ohio App.3d 68, 72 (2d Dist.1988) (embracing that "there seems to be no doubt that there was a dispatch over the radio that would qualify as an emergency call"). Significantly, contrary to any suggestion by Williams, there is no requirement under

R.C. 2744.02 "'that the police officers operate their sirens or overhead lights in order to be deemed to be responding to an 'emergency call,' for purposes of invoking immunity from civil liability.'" *Champagne v. Franklin Cty. Sheriff's Office*, 10th Dist. Franklin No. 17AP-721, 2019-Ohio-1459, ¶ 21, quoting *Moore* at 709.

{¶23} Furthermore, there is no genuine issue of material fact as to whether Sergeant Hoehn engaged in wanton misconduct while operating his police cruiser. "The terms 'willful' and 'wanton' delineate 'distinct degrees of care and are not interchangeable.'" *Ibrahim v. Dayton*, 2d Dist. Montgomery No. 27699, 2018-Ohio-1318, ¶ 16, quoting *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 31. Willful misconduct implies an *intentional* deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." (Emphasis added.) *Massillon* at paragraph two of the syllabus. Similarly, wanton misconduct is defined as "the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." (Emphasis added.) *Id.* at paragraph three of the syllabus.

{¶24} "Both wanton and willful describes conduct that is greater than negligence and can be summarized as follows: willful conduct is the intent to harm

someone and wanton misconduct is the failure to exercise any care whatsoever." *Gattrell v. Utica*, 5th Dist. Licking No. 15-CA-26, 2016-Ohio-792, ¶ 47, citing *Massillon* at ¶ 48. However, because Williams does not challenge the willful-misconduct element, we will not address it.

**{¶25}** After reviewing the record in a light most favorable to Williams, there are no unique facts about the high-speed chase at issue in this case which create a genuine issue of material fact as to whether Sergeant Hoehn operated his police cruiser with wanton conduct. Rather, based on the totality of the circumstances of Sergeant Hoehn's conduct in the record, we conclude that there is no triable issue on this element. Importantly, Sergeant Hoehn testified that he exercised some degree of care throughout the pursuit. *Compare Westlake*, 2021-Ohio-4582, at ¶ 41, citing *Pendry v. Troy Police Dept.*, 2d Dist. Montgomery No. 28531, 2020-Ohio-3129, ¶ 16. *See also Glenn*, 2016-Ohio-7011, at ¶ 24. Even though Williams contends that there is an evidentiary dispute as to whether Sergeant Hoehn's siren was activated, reasonable minds can conclude only that Sergeant Hoehn did not operate his cruiser with wanton misconduct. *Compare Glenn* at ¶ 22 (assessing that "there are genuine disputes as to whether the electronic siren was on and whether [the decedent's] vehicle came to a complete stop as Engine 32 approached. However, construing the evidence most favorably toward the executor, no

reasonable jury could conclude that [the defendant] engaged in wanton misconduct, that is, that [the defendant] failed to exercise 'any care' toward other motorists").

**{¶26}** Specifically, Sergeant Hoehn testified that he activated his overhead-emergency lights; that he did not attempt to force the vehicle off the road; that he maintained a reasonable distance behind the vehicle; that he slowed his cruiser at times for the safety of other motorists on the roadway; and that he followed the Shawnee Township Police Department's pursuit policy. *Accord Westlake* at ¶ 41, citing *Pendry* at ¶ 16. *See also Glenn* at ¶ 24. Stated another way, there is no genuine issue of material fact that Sergeant Hoehn "exercised at least some care in trying to prevent a vehicle collision" during the pursuit, "and he did not otherwise engage in extreme conduct that would effectively negate or eliminate the significance of the care he did exhibit." *Glenn* at ¶ 24. Therefore, reasonable minds can conclude only that Sergeant Hoehn did not operate his cruiser with wanton conduct.

**{¶27}** Because we conclude that there is no triable issue on the second element of Williams's political-subdivision-immunity claim, we need not proceed to the third tier of the analysis. *See id.* at ¶ 43. Accordingly, Shawnee Township is entitled to political-subdivision immunity under R.C. 2744.02(B)(1). Consequently, the trial court did not err by granting summary judgment in favor of Shawnee Township.

*Sergeant Hoehn*

**{¶28}** Finally, there is no genuine issue of material fact that Sergeant Hoehn is entitled to immunity under R.C. 2744.03(A)(6). "Immunity is also extended to individual employees of political subdivisions." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 10; R.C. 2744.03(A)(6). "R.C. 2744.03(A)(6) establishes the framework of analysis for determining whether a political subdivision employee is entitled to immunity." *Holmes v. Cuyahoga Community College*, 8th Dist. Cuyahoga No. 109548, 2021-Ohio-687, ¶ 38. Specifically,

> R.C. 2744.03(A)(6) provides a general grant of immunity to an employee of a political subdivision unless one of the following exceptions applies: (1) the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, (2) the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or (3) liability is expressly imposed upon the employee by a section of the Revised Code.

*Plush v. Cincinnati*, 1st Dist. Hamilton No. C-200030, 2020-Ohio-6713, ¶ 34. *See also Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 23 ("In addition, the legislature expressly removed immunity from employees of a political subdivision for wanton or reckless conduct in R.C. 2744.03(A)(6)(b)."). "This standard applies to law-enforcement officers just as it applies to other employees of political subdivisions." *Westlake*, 2021-Ohio-4582, at ¶ 13, quoting *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 7.

**{¶29}** Importantly, "[f]or these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Lambert* at ¶ 10. *See also Massillon* at ¶ 23 (asserting that "an employee is immune from liability for negligent acts or omissions").

**{¶30}** In this case, Williams argues only that Sergeant Hoehn's conduct was wanton or reckless. Therefore, we will review only whether there is a genuine issue of material fact as to whether Sergeant Hoehn's conduct was wanton or reckless.

**{¶31}** As applied under R.C. 2744.03(A)(6)(b), wanton misconduct is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Massillon* at paragraph three of the syllabus. Likewise, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. To contrast, "negligence is conduct that falls below the reasonable standard of ordinary care and relates to protecting against foreseeable risks to others" and is defined as "'[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'" *Id.* at ¶ 45 (Lanzinger, J.,

concurring in part and dissenting in part), quoting *Black's Law Dictionary* 1133 (9th Ed.2009).

**{¶32}** Importantly, "wanton conduct is more culpable than reckless" conduct and both types of conduct exceed negligence. *Id.* at ¶ 43, 46-47 (Lanzinger, J., concurring in part and dissenting in part). In sum, "[t]he goal of the immunity statute is to protect political subdivisions and their employees from liability for *negligent* conduct, but not for conduct exceeding negligence." (Emphasis added.) *Id.* at ¶ 47 (Lanzinger, J., concurring in part and dissenting in part). In other words, "'an officer's mere negligence in the performance of official duties does not give rise to personal liability.'" *Westlake*, 2021-Ohio-4582, at ¶ 13, quoting *Hoffman v. Gallia Cty. Sheriff's Office*, 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, ¶ 37, citing *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 357 (1994).

**{¶33}** Significantly, the Supreme Court of Ohio has professed that "'[t]hese are rigorous standards that will in most circumstances be difficult to establish, especially with respect to a law-enforcement officer carrying out the statutory duty to arrest and detain a person violating the law.'" *Westlake* at ¶ 14, quoting *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, at ¶ 8, citing R.C. 2935.03(A)(1). "Indeed, no other public employee faces the potential danger, violence, or unique statutory responsibilities a law-enforcement officer faces." *Id.*, citing *Argabrite* at ¶ 15. "We expect law-enforcement officers to protect the public, but that

expectation need not obligate those officers to sit idly by while a suspect flees the scene of a crime, particularly when the suspect's flight itself endangers the general public further." *Id.*, citing *Argabrite* at ¶ 16. "The officers need not take such a chance and hope for the best, especially when there exists no way to convey convincingly to the fleeing suspect that his pursuit has been terminated and he is free to go, and he may conceivably be just as likely to continue driving recklessly given the uncertainty surrounding his fate." *Id.*, citing *Scott v. Harris*, 550 U.S. 372, 385, 127 S.Ct. 1769 (2007).

{¶34} "Accordingly, the danger of a high-speed chase alone is not enough to present a genuine issue of material fact as to whether an officer has acted with a malicious purpose, in bad faith, or in a wanton or reckless manner." *Id.* at ¶ 15, citing *Argabrite* at ¶ 16, citing *Shalkhauser*, 148 Ohio App.3d 41, 2002-Ohio-222, at ¶ 40. Instead, a court may look to other considerations when determining whether "a law enforcement officer operated a motor vehicle willfully, wantonly, recklessly, or simply negligently," which may include:

> "(1) the officer's speed; (2) whether the officer was traveling in the correct lane of travel; (3) whether the officer had the right-of-way; (4) the time of day; (5) the weather; (6) the officer's familiarity with the road; (7) the road contour and terrain; (8) whether traffic was light or heavy; (9) whether the officer made invasive maneuvers (i.e., attempting to force the vehicle from the road) or evasive maneuvers (i.e., attempting to avoid a collision); (10) the nature and seriousness of the offense that prompted the emergency; (11) whether the officer possessed a safer alternative; (12) whether the officer admitted to disregarding the consequences of his actions; (13) whether the officer

activated the vehicle's lights and siren[ ]; and (14) whether the officer violated any applicable departmental policy.

*Id.*, quoting *Hoffman* at ¶ 49. However, because no one factor is determinative, courts must consider the totality of the circumstances surrounding the pursuit. *Id.*, citing *Hoffman* at ¶ 49.

**{¶35}** In this case, Williams argues that genuine issues of material fact remain as to whether Sergeant Hoehn's conduct was wanton or reckless. Specifically, she contends that Sergeant Hoehn acted wantonly or recklessly by failing to abandon the high-speed pursuit of the stolen black Ford Mustang. In other words, Williams argues that Sergeant Hoehn "was reckless in assuming an indifferent attitude toward public safety (i.e. engaging in a high speed pursuit that posed no benefit to the public's safety)" because "[t]here is a great probability that harm will result when an officer drives at a high rate of speed, through fields, backyards, business laden streets with no regard for speed limits, stop sights or stop lights." (Appellant's Brief at 10).

**{¶36}** However, based on our review of the record, we conclude that there is no genuine issue of material fact that Sergeant Hoehn's conduct was not wanton or reckless. That is, there is no triable issue as to whether Sergeant Hoehn failed to exercise *any* care toward Williams in a circumstance under which there was a great probability that harm will result. Further, there is no triable issue whether Sergeant Hoehn disregarded a known or obvious risk of harm to Williams that was

unreasonable under the circumstances and the risk of harm was not substantially greater than negligent conduct.

**{¶37}** In this case, Sergeant Hoehn stressed that his conduct during the pursuit was "justified" and that he adhered to the Shawnee Township Police Department's policy and procedures during the pursuit. (Nov. 2, 2021 Depo. at 34). Significantly, even though the underlying allegation was the alleged abduction of the caller's grandson—which Williams argues was a misrepresentation of the circumstances—the alleged abduction nevertheless constituted a serious-felony offense. *See Westlake*, 2021-Ohio-4582, at ¶ 30 ("Although the underlying allegation was the theft of the truck, which Plaintiffs-Appellants stressed is merely a non-violent property offense, it was still a serious felony offense.").

**{¶38}** Further, to the extent that Williams argues that Sergeant Hoehn's failure to pursue "a safer alternative" creates a genuine issue of material fact that Sergeant Hoehn's conduct was wanton or reckless (since the caller's grandson was not a child and he willingly went with the other miscreants in the stolen black Ford Mustang), such argument is specious. That is, "officers are not required to always allow suspected felons to avoid apprehension simply by fleeing—relying instead on the hope of his capture sometime in the future—especially when the suspect's flight endangers the general public further." *Id.*, citing *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, at ¶ 16 and *Scott*, 550 U.S. at 385. "Contrarily, law-enforcement

officers have a duty to apprehend reckless motorists who make the roads dangerous to others." *Id.*, citing *Shalkhauser*, 148 Ohio App.3d, 2002-Ohio-222, at ¶ 25.

**{¶39}** Indeed, Sergeant Hoehn testified that he was dispatched to 1350 West Shore Drive in Lima, Ohio on February 25, 2019 at approximately 5:35 a.m. in response to a report that two "white males had taken [the caller's] grandson." (*Id.* at 14). While proceeding to that residence, he identified "a vehicle matching the description" of the vehicle—the black Ford Mustang—provided by the caller at an intersection "very close to the West Shore address." (*Id.* at 15). Consequently, Sergeant Hoehn activated his overhead lights to initiate a traffic stop of the black Ford Mustang, but the suspect refused to stop the vehicle. Instead, the person operating the black Ford Mustang began to speed up, causing Sergeant Hoehn to activate his siren.

**{¶40}** At this point, Williams again suggests that the evidence in the record reflects a genuine issue of material fact that Sergeant Hoehn's conduct was wanton or reckless because there is an evidentiary dispute as to whether he activated his siren. However, based on our resolution of this issue under our discussion of Shawnee Township's political-subdivision immunity, that issue is insufficient to create a genuine issue of material fact here as well.

**{¶41}** Furthermore, even though the pursuit occurred in the early-morning hours, the roads were dry, * * * conditions were otherwise clear," and Sergeant

Hoehn "encountered very light traffic." (Doc. No. 45, Ex. A). Moreover, while the pursuit reached speeds up to 90 miles per hour, there were also times when the pursuit proceeded at a much slower pace. *See Westlake*, 2021-Ohio-4582, at ¶ 30.

{¶42} The record reveals that the suspect vehicle failed to heed stop signs and stop lights and proceeded in the wrong lane of travel to either pass vehicles or effect a turn. Those circumstances necessitated Sergeant Hoehn to fail to obey those traffic-control devices and cross into the opposite lane of travel as well. However, even though Sergeant Hoehn failed to heed those traffic control devices, he testified that he slowed "down, and [made] sure that [he] had a visual of oncoming traffic" before proceeding through an intersection. (Nov. 2, 2021 Depo. at 22). Likewise, Sergeant Hoehn testified that he followed the suspect vehicle "in the wrong lane" of travel after observing "no traffic on the roadway." (*Id.* at 18-19). *See Westlake* at ¶ 30 ("The officers crossed the double-yellow line at times to pass vehicles that were either attempting to pull over or had already pulled over, but not during times when oncoming traffic was present in the other lane."), citing *Scott* at 392 (Stevens, J., dissenting) ("Passing a slower vehicle on a two-lane road always involves some degree of swerving and is not especially dangerous if there are no cars coming from the opposite direction.").

{¶43} Sergeant Hoehn testified that the pursuit proceeded down what he "thought was an alley," but "turned out to be an access road" "that later turned into

-23-

residents [sic] back and side yards." (Nov. 2, 2021 Depo. at 20); (Plaintiff's Ex. 1). *Compare Westlake* at ¶ 30 (noting that the circumstances of the pursuit necessitated the officers to travel "briefly through some landscaping"). Nevertheless, Sergeant Hoehn testified that there were no people outside and that he was "able to maintain control of [his] vehicle at [those] speeds in th[e] back yard." (Nov. 2, 2021 Depo. at 21). Significantly, he testified that his cruiser did not strike anything while traveling through the back yard.

{¶44} Moreover, Sergeant Hoehn testified that he did not attempt to force the vehicle from the roadway because "[t]hat's not how [the] department is trained to do." (*Id.* at 20). Rather, he testified that he maintained a reasonable distance behind the suspect throughout the pursuit. Further, Sergeant Hoehn testified that he "had dispatch notify [the City of Lima] that [the pursuit] entered into their area" "[o]nce [the pursuit] entered into the City of Lima" "to gain assistance from them." (*Id.* at 25). Notably, Sergeant Hoehn testified that he was primarily concerned for the safety of the occupants of the black Ford Mustang because "[g]iven the information that was given at the time, [he] felt there was a serious offense occurring." (*Id.* at 34).

{¶45} Thus, even when viewing the evidence in a light most favorable to Williams, there is no genuine issue of material fact that Sergeant Hoehn's conduct was not wanton or reckless. *See Westlake* at ¶ 37. Therefore, Sergeant Hoehn is

entitled to statutory immunity under R.C. 2744.03(A)(6). Accordingly, the trial court did not err by granting summary judgment in favor of Sergeant Hoehn.

{¶46} For these reasons, Williams's assignment of error is overruled.

{¶47} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**MILLER, P.J. and SHAW, J., concur.**

**/jlr**